Spear, J.
In view ■ of the importance of the questions involved, and because of the large moneyed interests at stake, counsel were accorded *363 unusual time for oral argument, and the court has been favored, besides, with elaborate briefs, covering every possible phase of the controversy. It will, however, be impracticable in the brief space accorded to an opinion, to review all of the various contentions of counsel and cover all the points brought to our attention. We will needs be content to state in such brief terms as we may the conclusions to which the court, after very full consideration, has arrived.
Powers of the sinking fund trustees- to deal with the debt of the city are statutory, and the controversy in this case largely turns upon the question of what statutes apply to the transaction in review. If, as is contended by plaintiffs in error, the contract is simply a refunding scheme, and controlled wholly by - sections 2729a, b, d, e, the question of the power of the trustees to enter into the contract is probably not a difficult one. Pertinent provisions of section 2729c; ar.e to the effect that “the sinking-fund commissioners * * * for the purpose of refunding- the bonded debt * * * at a lower, rate of interest, and for the purpose of buying- the fee simple of real estate held by the city under perpetual leases, wherein is secured to the city the option to buy the fee simple at a fixed price, and where the money to buy can be procured at a smaller rate of interest on the price than is represented by the stipulated rents, shall have power to make and issue the bonds of such city, with coupons or registered, due fifty years and redeemable thirty years from date, bearing interest at a rate not greater than five per centum per annum, payable semi-annually, to an aggregate amount not exceeding twenty-six millions of dollars, to be known as the-consolidated sinking *364 fund bonds * * Section 27296 which provides for the lettering and numbering of bonds, etc., requires that “suchof the bonds provided for in the preceding section as may be intended and used for refunding bonded debt which is payable out of or chargeable upon a special fund or special source of revenue, or is secured in whole or in part by any pledge or lien, shall be so lettered and numbered as to show the debt to which it is applicable. The secretary of the trustees of the sinking fund shall keep separate accounts of the proceeds and application thereof of bonds used to refund such debts, and of the revenues and sinking fund applicable to each class of said bonds, unless and until otherwise provided by law. Purchasers of any bonds authorized by the preceding section shall not be held responsible for the application of purchase money. The property, credit, and revenues of the city issuing such bonds shall stand pledged alike for all the bonds issued, without priority of right of any part of the bonds so issued by reason of priority of the date or sale of the same, or for any other reason. ” Section 2729d provides that so long as the sinking fund of such city shall be insufficient to pay, when due, interest and principal of any and all outstanding bonds issued under section 2629a, the security and means of payment provided in section 2712, and certain other specified sections of the municipal code, shall not be impaired, but shall stand pledg-ed to the payment of the interest and principal of said bonds. And section 2729c: “The trustees of the sinking-fund * * * are authorized to employ a clerk * * * for a reasonable compensation, proportioned to service rendered, which shall be paid out of the sinking fund, and repaid to the sinking fund *365 out of the general fund of the city not otherwise appropriated. Necessary expenses of the trustees of the sinking fund in issuing bonds, negotiatingthe refunding of the city debt, or other duties imposed by the four preceding sections, shall be paid from the sinking fund and repaid from the general fund of the city not otherwise appropriated.”
It is insisted ,by plaintiffs in error that these sections empower the trustees to refund the bonded debt, which includes each and all of the issues of bonds set forth in the contract, and, in order to accomplish it, authorize the trustees to make and issue bonds due fifty years, redeemable in thirty after date, with interest not to exceed five per. centum. This contract provides for the issue of bonds for the purpose 'stated, at three and one-half per centum. It specifically provides for the making and issuing of sufficient refunding’ bonds to retire each and all the outstanding issues enumerated in the contract, and it specially obligates the bankers to buy and accept from the trustees as many of the refunding 'bonds as may be necessary to provide for the refunding of the several issues of outstanding bonds. The contract was but an exercise of power to refund the outstanding issues enumerated in it; the purpose was to retire those issues at or before maturity by making and issuing refunding bonds, and it sought to accomplish this purpose solely by making and issuing refunding bonds of thepreci.se character authorized by section 2729a, and the contract if executed, will accomplish this purpose. Section 2729c, recognizes the existence of the power of the trustees, given by section 2729a, to negotiate with other persons for refunding the city debt and to enter into a con *366 tract for that purpose, and in direct terms gives authority for the payment of necessary expenses in negotiating and refunding. Compensation to bankers would be necessary expenses. The power to make the contract is, therefore, clear; it was proposed to be executed strictly according to law, and the validity of the contract cannot be legally assailed.
But it is contended by defendant in error that other sections of the statutes relate to the subject in controversy and are necessarily involved in its consideration. Attention is specially called to sections 2709, 2729g (2) and h (2). The first named section provides: “Whenever any municipal corporation issues its bonds, it shall first offer them at par and accrued interest to the trustees or commissioners, in their official capacity, of the sinking fund, or, in case there are no such trustees or commissioners, to the officer or officers of such corporation having charge of its debts, in their official capacity, and only after their refusal to take all or any of such bonds at par and interest, bona fide for and to be held for the benefit of such corporation, sinking fund or debt, shall such bonds, or as many of them as remain, be advertised for public sale. In no case shall the bonds of the corporation be sold for less than their par value ; nor shall such bonds when so held for the benefit of such sinking fund or debt, be sold, except when neeessarjr to meet the requirements of such fund or debt. All sales of bonds, other than to the sinking fund, by any municipal corporation, shall be to the highest and best bidder, after thirty days’ notice in at least two newspapers of general circulation in the county where such municipal corporation is situated, setting forth the nature, *367 amount, rate of interest and length of time the bonds have to run, with time and place of sale. Additional notice may be published outside of such county by order of the corporation council. Provided, however, when any such bonds have been once so advertised and offered for public sale, and the same, dr any part thereof, remain'unsold, then said bonds, or as many as remain unsold, may be sold at private sale at not less than their par value, under the direction of the mayor and the officers and agents of the corporation by whom said bonds have been, or shall be prepared, advertised and offered at public sale. Provided further, that when it shall appear to the trustees or council of any municipal corporation to be for the best interests of such corporation to renew or refund any bonded indebtedness of such corporation which shall not have matured, and thereby reduce the rate of interest thereon, such trustees or council shall have authority to issue for that purpose new bonds, with semi-annual interest coupons attached, and to exchange the same with the holder or holders of such outstanding' bonds, if such holder or holders shall consent to make such exchange and to such reduction of interest. But the rate per annum of interest on any such new bonds thus issued imexchange by any city of the first class, or by any city of the first or second grade of the second class, shall not exceed four and one-half per cent., and by any other city shall not exceed five per cent., and by other municipalities shall not exceed five and one-half per cent., such new bonds shall not in any case be so issued in an amount in excess of such outstanding bonded indebtedness so to be renewed or refunded, and may be in such denominations and payable at such time *368 or times and at such, place as may be determined by such .trustees or council.” Section 2729y (2) reads that “in any city wherein trustees of the sinking fund have been appointed under the provisions of section 2715, Revised Statutes, such trustees in addition to their other powers, shall have the power to make and issue for the purpose hereinafter specified in section 2729A the bonds of their city, with coupons or registered, running- for such length of time, not exceeding fifty years, as the trustees may determine, and bearing interest at a rate not greater than four per centum per annum, payable, semi-annually. Such bonds shall be known as the--consolidated sinking fund bonds * *. The bonds shall be signed by the mayor of the city, countersigned by the auditor or corresponding-officer, and have affixed the seal * * *. Such bonds shall be sold as provided in section 2709, Revised Statutes.” (Section 2715 is the section which authorizes the appointment of the board of sinking fund trustees, parties herein.) And section 2729A (2): “The purpose for which alone the bonds provided by section 2729y may be made, issued, and sold shall be the renewal or extension of existing bonded debt of the city which from any reason the trustees of the sinking fund of such city are unable to pay at maturity. The bonds authorized by section 2729g shall never, for any city, aggregate in outstanding -amount more than what m&y at any time be unpaid of the bonded debt of such city now outstanding and hereafter lawfully authorized to be issued, it being the object of section 27295 to provide only bonds for renewal or extension of legally existent bonded debt which at maturity is not paid and extinguished; and to that end the power herein and by section 2729b *369 conferred is a continuing power, and includes renewal of bonded debt now existing, hereafter lawfully created by said cities respectively, for which the trustees of the sinking- fund act, and extends to one or more renewals of any of the bonds issued hereunder ; but nothing herein shall be construed to excuse said trustees from levying and applying taxes for sinking fund and the earnings from investment thereof, as now provided and required by law.”
If the provisions of these sections are to enter into the consideration, it is manifest that the proper solution of the question at issue becomes more difficult. Objections based upon these sections made by defendant in error are: 1. That the contract provides for sale of municipal bonds without advertisement and without calling for or receiving competitive bids for the same. 2. The contract provides for the purchase of outstanding bonds at a premium to be paid in new bonds, the result of which will be to increase the principal of that part of the funded indebtedness of the city covered by the contract to the extent of some three million dollars, which increase is not only not authorized by statute, but is expressly forbidden. 3. It provides for the sale of bonds at much less than their real value.
The sections referred to all relate to the same general subject, viz.: the government of municipal corporations, being part of Title XII, formerly entitled “Municipal Code.” They relate, also, to the same special subject, viz., the management of the finances of municipal corporations, and are found under the same division which is entitled “Finance and Taxation.” Section 2709 is part of *370 Chapter 2, headed “Power to Borrow Money and Issue Bonds,” and the other sections are parts of Chapter 3, headed “Sinking Fund,” and are amendments to the original code. But they are to be treated as part of the entire statute, the same as though enacted at the same time, and, applying the general rule that a code of statutes relating to one subject, being governed by one spirit and policy, is intended to be consistent and harmonious, in order to arrive at the meaning of any part the whole should be considered. True, it is not uncommon to find in legislation special provisions intended to supplant or supersede, for the special subject matter, some general provision on the same general subject, but such instances are expected to be so marked, either by force of the language itself, or by necessary implication as to the purpose to be accomplished, as that the meaning shall be plain. Do these sections furnish evidence of any such purpose? They all relate to the management of the finances of municipal corporations and are, therefore, as before stated, to be considered as in pari materia. Does the language of sections 2729a, b, cl, e, ■ show a purpose to authorize a departure from the requirements of section 2709 with respect to the disposition of bonds of a municipality? That the sale of bonds is contemplated by those sections seems entirely clear. The purpose of 2729a is two-fold; one to enable the trustees to refund the bonded debt, the other to enable them to buy the fee simple of real estate held by the city under perpetual leases. A purchase implies the use of money. The obtaining of money implies a parting with something of value. This imports a sale. The bonds are to produce that which will enable the trustees to buy, *371 i. e., money. This is further shown by one paragraph of 27295, viz.: “Purchasers of any bonds authorized by the preceding section shall not be held responsible for the application of purchase money.” A refunding might be accomplished without a sale; a purchase, such as is here provided for, could not be. The legislature might have authorized a refunding without a sale of bonds, but no distinction is made by these sections between the mode of obtaining means for the accomplishment of one result and the mode required for the other; the authority of the trustees applicable to both is : “shall have power to make and issue the bonds of the city.” A sale being required and no method of conducting it having been provided, it follows that we look to other sections for that detail, and it is given in section 2709, by the requirement of a sale to the highest and best bidder after thirty days’ notice by advertisement in newspapers. And as the language of section 2729g (2) indicates no intent to waive or change this direction as to publicity, but rather emphasizes that purpose, we must conclude that the requirement to advertise is obligatory on the sinking fund trustee's, whenever sales are to be made.
Let us now see what the contract provides in this respect. Can there be doubt that the draftsman understood he was providing for a sale of bonds? In one of the preliminary paragraphs, the fact is expressed that the bankers have proposed to purchase bonds, and in the first paragraph of the stipulation the trustees agree to sell and deliver to the bankers, and they agree to buy and accept, so many of the refunding bonds as shall be necessary to be sold, and the idea of a sale is expressed no less than five times in subsequent *372 paragraphs of the contract. An option is given the bankers to" make payment for refunding bonds either in cash or in outstanding bonds of the issue to be refunded, which, by a later provision, is limited to a period of ninety days before the maturity of the bonds. But, within that time, the purchase may be for cash, and the amount is not limited save that it may not exceed the amount of outstanding bonds maturing within said ninety days. It seems needless to refine on this phase of the case. Whether all the bonds issued by the trustees be sold, or some sold and some exchanged, can make no material difference in the legal effect of the transaction. In either aspect the contract provides for a sale of bonds by the trustees, and the conditions of publicity and competition are wholly wanting. In our view this renders the contract open to one of the vital objections urged against it, and upon this ground we hold ii to be unauthorized.
Another objection urged by defendant in error is that the contract unlawfully increases the bonded indebtedness of the city. Waiving the question whether the contract, if carried out, would result in an increase of the bonded debt beyond the maximum authorized by statute, of twenty-six millions, it seems reasonably clear that in the sense that the city is required to pay interest on an increased sum, the objection of increase is well founded. That is, the interest is to be added, thus eonstitutingadditional principal. The objection to this is that it is a departure from the duty enjoined by statute. We think the point well taken. Section 2712 gives authority to levy an annual tax for the extinguishment of the bonds and funded debt of the municipality, and section 2723 *373 enjoins upon the trustees the duty to provide for the payment of all interest on the city bonded debt. This duty is regarded as so important that the trustees are empowered to use not only the money in their possession, but any securities as well; and all means raised for payment of the funded debt are pledged to that exclusive purpose. (2712 and 2729a.) Besides, our statutes, in many provisions, forbid the increase of municipal debts without express authority therefor. In view of all the provisions on the subject, it may be safely affirmed that the policy of our law is to prevent, rather than encourage, the accumulation of municipal debt which would prove a continuing burden on the people. This purpose is advanced by the payment of interest as it accrues, but is defeated if the interest is added to the principal. Provision being thus made by statute for raising by taxation sufficient revenue to pay the interest on bonded municipal debt, and the obligation to provide for its payment imposed, it is clearly the duty of the city officials upon whom devolves the care of these financial interests to avail themselves of this power, and perform this duty, and thus prevent the increase of the city bonded debt. Another objection urged against the contract is that it is an attempt to exercise power by the sinking fund trustees which, by the act of April 25, 1898 (93 O. L., 672), supplementary to the act of May 4, 1869, known as the Southern Railway act, is devolved on the board of railway trustees. The proposition is ably argued, pro and con, and has been considered. It presents a question of much doubt and of no little difficulty. But inasmuch as its disposition is not essential to a decision of the case, and as no act of the railway trustees is before *374 the court for adjudication, the point is not decided.
Many other objections are advanced, but a review of them would unduly add to the length of this opinion. Our holding is that the contract is invalid because it provides for sales of municipal bonds by the trustees without publicity and without opportunity for competitive bids, and because it provides for the refunding of accrued interest instead of for its payment.

Judgment affirmed.